IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAROLE BOURNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 14-1459-GMS |
| | ) |
| V.C. ENTERPRISE/KIRBY HOME | ) |
| CLEANING SYSTEM, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM**

### I. **INTRODUCTION**

The plaintiff, Carole Bourne ("Bourne"), who proceeds *pro se* and has been granted leave to proceed without prepayment of fees, filed this lawsuit pursuant to 42 U.S.C. §§ 2000e, *et seq.*, alleging employment discrimination by reason of sex. Before the court are several motions filed by the parties including cross-motions for summary judgment. For the reasons that follow, the court will grant the motions for summary judgment filed by The Kirby Company.

### II. **PROCEDURAL AND FACTUAL BACKGROUND**

Bourne presented her discrimination complaint to the Delaware Department of Labor ("DDOL") on June 16, 2014, and, on July 1, 2014, perfected a dual charge of discrimination, No. BOU061614/17C-2014-00506, with the DDOL and U.S. Equal Employment Opportunity Commission ("EEOC"). (D.I. 2 ex.) The charge of discrimination asserts discrimination based upon sex and disability, and continuing adverse employment actions that began on May 23, 2014 and continued through June 10, 2014, when Bourne was discharged from her employment. (D.I. 2. ex.)

The charge of discrimination names V.C. Enterprise/Kirby Home Cleaning Systems as Bourne's employer. Bourne was employed as a telemarketer from November 15, 2013 until June 10, 2014. The charge asserts that Bourne had a known disability and was able to perform the essential functions of her position with, or without, a reasonable accommodation. The charge asserts that owner Vaughn Colter ("Colter") tricked Bourne into having sex with him on one occasion and, prior to that, had sexually harassed her on several occasions. The charge states that Colter disciplined, demoted and discharged Bourne on June 10, 2014 for failure to meet productivity goals, but Bourne believes that Colter discharged her because he did not want his fiancé or employees to learn of their sexual relationship. The charge states that V.C. Enterprise/ Kirby Home Cleaning Systems also discriminated against Bourne because of her disability.[1] Colter, the owner of VC Enterprises, responded to the charge and stated that the allegations were absurd and slandered his name and business. (D.I. 2 ex.)

On July 23, 2014, the DDOL issued its finding and recommended dismissal of the charge unless additional information was received that would warrant further investigation. (*Id.*) The EEOC reviewed the findings of the DDOL, as well as additional material submitted by Bourne, and adopted the DDOL's findings, dismissed the charges as there was no probable cause to believe that the law had been violated, and issued a notice of suit rights on October 14, 2014. (*Id.*) Bourne initiated this lawsuit on December 3, 2014. (D.I. 2.)

The complaint alleges that Bourne was subjected to employment discrimination at Colter's place of business in Wilmington, Delaware,[2] when Bourne was not promoted and her

---

[1] The disability is not identified.

[2] The address is listed as 3700A, Old Capitol Trail, Wilmington, Delaware.

2

employment was terminated. Disability discrimination is not raised in the complaint, and it appears that Bourne has abandoned the claim.

On January 26, 2015, the court entered a service order for Bourne to complete and provide to the Clerk of Court an original USM-285 form for the defendant. (D.I. 6.) Bourne named one defendant in the caption of the complaint - V.C. Enterprise/Kirby Home Cleaning Systems, and she submitted a USM-285 form for the service of V.C. Enterprise/Kirby Home Cleaning System (vacuum cleaner). (D.I. 2, 7, 10.) The USM-285 form contained two addresses: 3700A Old Capitol Trail, Wilmington, Delaware, and corporate office address 1920 E. 114th Street, Cleveland, Ohio. (D.I. 7, 10.)

Service packets were mailed to both addresses on March 18, 2015. The service packet mailed to the Wilmington, Delaware address was returned on April 6, 2015 with the notation, "package returned by post office 'no such address'". (D.I. 7.) The service packet mailed to the corporate office address in Cleveland, Ohio, resulted in an executed return of waiver of service of summons signed by David Lamb ("Lamb"), vice-president of Scott Fetzer Company ("Scott Fetzer") for Kirby, a division of Scott Fetzer. (D.I. 8, 10.)

On April 27, 2015, counsel for The Kirby Company contacted Bourne and advised her that The Kirby Company had no involvement with Bourne's employment by VC Enterprises. (D.I. 9.) Bourne was told that VC Enterprises was a local independent distributor of The Kirby Company's products, that The Kirby Company did not own any part of VC Enterprises, and that it had no involvement in the hiring or firing decisions made by VC Enterprises. (*Id.*) The Kirby Company believed that the claim against it had been brought in error and asked Bourne to dismiss it. (*Id.*) Bourne declined to dismiss the claim against The Kirby Company stating that

3

"[e]ven though the defendant is a local independent distributor for Kirby, he however is selling Kirby product for both profit of the Kirby Company and himself." (*Id.*)

Lamb's affidavit states that The Kirby Company is an unincorporated division of The Scott Fetzer Company. (D.I. 14, ¶ 1.) There is no entity named Kirby Home Cleaning System that is affiliated with The Kirby Company or The Scott Fetzer Company. (*Id.* at ¶ 2.) VC Enterprises is one, of many, local, independent distributors of The Kirby Company's vacuums. (*Id.* at ¶ 4.) The Kirby Company has no ownership interest in VC Enterprises and its relationship with VC Enterprises is solely contractual. (*Id.*) Lamb states that The Kirby Company has never had any involvement in employment decisions made by VC Enterprises and never participated in any way in the hiring, firing, or promotion decisions made by VC Enterprises with respect to its employees. (*Id.* at ¶ 5.)

Lamb states that until it received service, The Kirby Company had never heard of Bourne, never communicated or corresponded with her, never employed her, had no knowledge regarding her employment by VC Enterprises, and had no right to and did not control the manner and means by which Bourne executed or failed to execute her job responsibilities. (*Id.* at ¶ 6.) Lamb states that Bourne has never been on The Kirby Company's payroll, The Kirby Company has never compensated Bourne for her work for VC Enterprises or anything else, and it had no involvement in any decisions that may have been made by VC Enterprises regarding Bourne's employment by VC Enterprises. (*Id.*)

Bourne had not heard of Scott Fetzer until she was served with discovery. (D.I. 35, ex. A resp. 5.) Bourne's pay stubs make no reference to VC Enterprises, The Kirby Company, or Scott Fetzer, but are titled "dealer profit form." (D.I. 35, ex. A.) Bourne's paychecks were signed by

4

Vanessa Colter ("V. Colter") and Colter and they were the source of the compensation Bourne received as a telemarketer. (*Id.* at exs. B, C.) Bourne's superior was Colter. (*Id.* at ex. C.) She and Colter had a verbal agreement that Bourne was responsible for marketing Kirby home cleaning systems using the phone. (*Id.*) Bourne provided copies of text messages she indicates were from Colter. (D.I. 30.)

At college, Bourne learned of criteria used in deciding whether a worker is categorized as an independent contractor, and she would not admit that she was not an employee of Kirby. (D.I. 35, ex. B.) Bourne stated that she did not believe that Kirby would allow an employee of VC Enterprises to make thousands of calls using its name and not have a say in what is relayed to its customers. (D.I. 35, ex. B.) According to Bourne, her duties included daily communication with Kirby customers because every call was made to Kirby customers, and she introduced the customers to the Kirby cleaning system by persuading customers to schedule appointments for the purchase of the system. (*Id.*) The name Kirby home cleaning system was used on every call made from VC Enterprises' office and each call is controlled by scripts. (*Id.* at ex. C.)

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The court will "draw all reasonable

inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Id.* Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

With respect to summary judgment in a discrimination case, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

The Kirby Company moves for summary judgment on the grounds that it was never Bourne's employer and had no involvement with Bourne's employment by VC Enterprises or otherwise. (D.I. 13, 34.) Bourne opposes the motion on the grounds that The Kirby Company employed her via a contractual agreement through its independent distributor. (D.I. 37.) Bourne also appears to move for summary judgment on the issue of damages she allegedly suffered

through the negligence of The Kirby Company and VC Enterprises. (D.I. 38.) The Kirby Company moves to strike the motion as untimely. (D.I. 40.)

## IV. DISCUSSION

### A. Show Cause

The complaint named one defendant, V.C. Enterprise/Kirby Home Cleaning System. The Kirby Company was served at its corporate address, provided by Bourne. Bourne also provided the address for VC Enterprises in Wilmington, Delaware and service was attempted upon V.C. Enterprise/Kirby Home Cleaning System there, albeit unsuccessfully. Bourne did not seek issuance of summons after the unsuccessful attempt at the Wilmington, Delaware address. In addition, it appears from her pleadings that her position is that The Kirby Company is her employer. Nevertheless, because Bourne appears *pro se*, in an abundance of caution, and to the extent that Bourne intended to name VC Enterprises as the defendant employer, Bourne will be ordered to show cause why VC Enterprises should not be dismissed as a defendant for failure to serve process within 120 days of filing the complaint, pursuant to Fed. R. Civ. P. 4(m).

### B. Title VII - Employer

At issue is whether The Kirby Company was Bourne's employer within the meaning of Title VII. Bourne alleges that her employer discriminated against her on the basis of sex. Title VII regulates the relationship between employers and employees. It authorizes a cause of action only against employers, employment agencies, labor organizations, and training programs. *See* 42 U.S.C. § 2000e-2.

When a statute containing the term "employee" does not define the term, or defines it in a completely circular fashion, the court should apply the common law definition. *Nationwide Mut.*

*Ins. Co. v. Darden*, 503 U.S. 318, 322-24 (1992). In *Darden*,[3] the Supreme Court set forth relevant factors to determine (in the ERISA context) whether a hired party is an employee under the general common law of agency and considers the hiring party's right to control the manner and means by which the product is accomplished using the following factors: (1) the skill required; (2) the source of the instrumentalities and tools; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the hired party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the hiring party; (10) whether the hiring party is in business; (11) the provision of employee benefits; and (12) the tax treatment of the hired party. *See Darden*, 503 U.S. at 323-24 (citing *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989)).

The essence of the *Darden* test is whether the hiring party has the "right to control the manner and means by which the product is accomplished." *Plaso v. IJKG, LLC*, 553 F. App'x 199, 204 (3d Cir. 2014) (unpublished) (quoting *Darden*, 503 U.S. at 323). The Third Circuit has held that courts applying *Darden* may focus on three indicia of control: (1) which entity paid plaintiff; (2) who hired and fired plaintiff; and (3) who "had control over [plaintiff's] daily employment activities." *Id.* (citing *Covington v. International Ass'n of Approved Basketball*

---

[3] *Darden* applies to Title VII cases. *See Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015) ("as a doctrinal matter, [] it us clear that the *Darden* test applies to Title VII cases.").

8

*Officials*, 710 F.3d 114, 119 (3d Cir. 2013)) (citation and internal quotations omitted). The court looks to these three factors in turn.

With regard to the first factor, nothing in the record suggests that The Kirby Company paid Bourne. The record reflects that Bourne has never been on The Kirby Company's payroll and The Kirby Company never compensated Bourne for her work for VC Enterprises or anything else. In addition, Bourne's pay stubs make no reference to VC Enterprises, The Kirby Company, or Scott Fetzer and her paychecks (the source of compensation she received as a telemarketer) were signed by V. Colter and Colter (the owner/distributor of VC Enterprises). Bourne states that she cannot admit that she was never on The Kirby Company's payroll, and speculates that The Kirby Company attempts to avoid liability by classifying employees as independent contractors. (D.I. 35, ex. B, resp. 7.) It is clear from the evidence of record, that the Kirby Company did not pay Bourne's salary, and Bourne's speculation does not raise a genuine issue of material fact.

The second factor, who hired and fired Bourne, favors The Kirby Company. Bourne does not indicate who hired her, but she states that she had an oral contract with Colter that Bourne was responsible for marketing the Kirby home cleaning system using the phone and that Colter was her superior. Colter's statement to the DDOL makes clear that he was the individual who fired Bourne "due to unqualified appointment settings, appointment quotas not being met, and towards the end, she just simply had too many excuses why she couldn't work certain hours." (D.I. 2, ex.) In addition, Lamb states that The Kirby Company had no involvement in the employment decisions made by VC Enterprises and did not participate in the hiring, firing, or promotion decisions made by VC Enterprises with respect to its employees and did not know

9

who Bourne was until it was served with process. Nothing in the record suggests that The Kirby Company hired Bourne or could terminate Bourne's employment as a telemarketer at VC Enterprises.

With regard to the third factor, the evidence of record is that VC Enterprises, not The Kirby Company, had control over Bourne's daily employment activities. Bourne identifies her superior as Colter. Although most text messages in the record are of a personal nature, at least one between Bourne and Colter indicates that Colter had control over Bourne's daily activities. Therein, Colter and Bourne discuss that Bourne needed a ride to work and she asked Colter if he or anyone else could pick her up or should she "just call off." (D.I. 30 at 2.) In addition, Colter's response to the DDOL indicates that he monitored Bourn's work schedule noting that she had "no shows" for work. Conversely, the record reflects that The Kirby Company had never heard of Bourne, never communicated or corresponded with her, and had no knowledge regarding her employment by VC Enterprises.

Bourne points to a pin she received as a top telemarketer for excelling in scheduling Kirby home cleaning system appointments (D.I. 35, ex. A, resp. 4), states that she was unaware that The Kirby Company did not control the manner and means by which she performed her job responsibilities as an employee of VC Enterprises (*id.* at ex. B, resp. 5), and does not believe that The Kirby Company would allow a VC Enterprises employee to conduct telemarketing using the Kirby name without having input on what is said to Kirby customers (*id.*). Even construing the facts in the light most favorable to Bourne, they nonetheless fail to create a genuine issue of material fact as to whether The Kirby Company had control over Bourne's daily activities.

In light of the foregoing, the court finds that the evidence of record does not support a conclusion that Bourne was employed by The Kirby Company.

Because Bourne proceeds *pro se*, the court also considers whether The Kirby Company was Bourne's joint employer under Title VII. A joint employment relationship exists under Title VII when "two entities exercise significant control over the same employees." *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997) (citations omitted). Whether an entity exercises significant control over an employee along with another entity hinges on whether that entity has: (1) "authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;" (2) "day-to-day supervision of employees, including employee discipline;" and (3) "control of employee records, including payroll, insurance, taxes and the like." *Plaso*, 553 F. App'x at 204-05. A review of the applicable law and the evidence of record leads the court to conclude that there is no genuine issue of material fact as to whether The Kirby Company was Bourne's joint employer.

As discussed above, and as to the first prong, no genuine issue of material fact suggests that The Kirby Company had "authority to hire and fire [Bourne], promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours." *Id.* As already discussed, Bourne's paychecks were signed by the Colters, and Colter, the owner of VC Enterprises, monitored her work schedule, and had the sole authority to fire Bourne.

As to the second prong, nothing in the record suggests that the Kirby Company exercised significant "day-to-day supervision of [Bourne], including employee discipline." *Id.* at 205. To the contrary, Bourne's supervisor was Colter, the owner of VC Enterprises, and he stated that he both congratulated and reprimanded Bourne with regard to her employment activities. Colter's

11

status as the only person to formally discipline Bourne provides further evidence that VC Enterprises exercised significant day-to-day supervision of Bourne.

With respect to the third prong of the joint employer test, the court concludes that there is no genuine issue of material fact as to whether The Kirby Company had "control of employee records, including payroll, insurance, taxes and the like." *Id.* There is a paucity of evidence as to the third prong. Bourne, however, states that end of shift documentation (such as daily appointment slips, callback, and timesheets) were kept in folders at VC Enterprises (D.I. 35, ex. C at resp. 1) and that she did not receive any tax forms from V.C. Enterprise/Kirby Home Cleaning System. The record does not contain any evidence that Bourne's employee records were maintained by The Kirby Company. After careful consideration, the court finds that no reasonable jury cold conclude that The Kirby Company was Bourne's joint employer.

Finally, the court notes that Bourne's reliance upon *Read v. Scott Fetzer Co.*, 990 S.W.2d 732 (Tex. 1998) is misplaced. In *Read* (a negligence action brought against Scott Fetzer by a customer who was assaulted in her home by a Kirby salesperson), the Supreme Court of Texas held that the defendant, by retaining control over vacuum cleaner sales by requiring in-home demonstrations, had a duty to exercise its control reasonably. In addition, *Read* recognized that a dealer was an independent contractor and not an employee of Kirby. *See Read*, 990 S.W.2d at 735; *see also Johnson v. Scott Fetzer Co.*, 124 S.W.3d 257, 263-64 (Tex. Ct. App. 2003) (finding that manufacturer was not employer of salesperson under the Texas Commission Human Rights Act (modeled after Title VII of the Civil Rights Act of 1964) for purposes of determining whether manufacturer was liable for area distributor's sexual harassment of salesperson).

In light of the forgoing, the court concludes that no reasonable jury could find that The Kirby Company was Bourne's employer or that it discriminated against Bourne in violation of Title VII.

## V. CONCLUSION

For the above reasons, to the extent that VC Enterprises is a named defendant, Bourne will be ordered to show cause why VC Enterprises should not be dismissed for failure to serve process within 120 days of filing the complaint, pursuant to Fed. R. Civ. P. 4(m). In addition, the court will: (1) grant The Kirby Company's motions for summary judgment (D.I. 13, 34) and will deny Bourne's motion to hear or award damages (for summary judgment) (D.I. 38); (2) grant Bourne's motion to submit documents as evidence (D.I. 19); (3) deny Bourne's motion requesting subpoena (D.I. 20), motion for a lie detector test (D.I. 24), and motion to produce (D.I. 25); (4) deny The Kirby Company's motion to strike Bourne's motion for summary judgment (D.I. 40); and (5) grant Bourne's motion for leave to file the motion for summary judgment out of time to the extent that the motion (D.I. 38) is deemed timely filed and will deny it in all other respects (D.I. 41).

An appropriate order will be issued.

UNITED STATES DISTRICT JUDGE

_____, 2016
Wilmington, Delaware